IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TAMMY L. GIFFORD                                                              PLAINTIFF

               v.                    Civil No. 12-2215

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                                DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Tammy Gifford, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

### I.     Procedural Background:

Plaintiff filed her applications for DIB and SSI on July 21, 2009, alleging an onset date of September 1, 2008, due to bilateral knee pain, low back pain, high blood pressure, and swelling in the ankles.  Tr. 58-63, 69-73, 74-77, 118-119, 137, 160-161, 174, 179-180.  The Commissioner denied Plaintiff's applications initially and on reconsideration.  Tr. 73-76, 80-86.  Pursuant to Plaintiff's request, an administrative hearing was held on August 31, 2010.  Tr. 26-53.  Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 46 years old and possessed a high school education with some college credits, but no degree.  Tr. 31, 141.  She had past relevant work "(PRW)" experience as a grocery checker and hand packager.  Tr. 138, 143-146, 152-159, 204.

---

[1] Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

AO72A
(Rev. 8/82)

On January 3, 2011, the ALJ found Plaintiff's morbid obesity, minimal arthritis of the bilateral knees, bilateral lower extremity edema, and hypertension to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 17. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that he retained the residual functional capacity ("RFC") to perform a full range of sedentary work. Tr. 18-21. Utilizing the Medical-Vocational Guidelines ("Grids"), the ALJ then determined Plaintiff was not disabled. Tr. 21-22.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on July 13, 2012. Tr. 1-5. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 9, 10.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings

of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.    Discussion:

In her appeal brief, Plaintiff raises the four points of error: 1) the ALJ erred by relying on a general physical examination performed by a nurse practitioner, rather than a doctor; 2) the ALJ

3

improperly discredited her subjective complaints; 3) the ALJ concluded Plaintiff could perform a full range of sedentary work; and, 4) the ALJ improperly applied the Grids.

### A.     Acceptable Medical Sources:

In her first point of error, Plaintiff contends that the ALJ erred in relying on the results of a general physical examination conducted by a nurse practitioner. Specifically, she argues that a nurse practitioner is not an acceptable medical source, and her examination is not entitled to substantial weight. According to the social security regulations, only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, provide medical opinions, and be considered treating sources. 20 C.F.R. §§ 404.1527(a)(2), (d) and 416.927(a)(2), (d) (2007). Acceptable medical sources include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. 20 C.F.R. § § 404.1513(a), 416.913(a) (2007). Other sources, including nurse-practitioners, however, may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); *see also* SSR 06–3p.

Here, the ALJ used the nurse practitioner's evaluation to determine the severity of, rather than the existence of, Plaintiff's medically determinable impairments. And, as such, used it properly. We also note that the nurse practitioner's evaluation was endorsed by a medical doctor, entitling it to treating source weight. *See Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir.2006) (allowing nurse practitioner, who was working as a part of a medical team with a doctor, to be treated as a treating source). Accordingly, we can find no error in the ALJ's reliance on the nurse practitioner's evaluations.

Likewise, we find Plaintiff's contention that the ALJ failed to develop the record by obtaining an RFC assessment from an acceptable medical source to be without merit.

AO72A
(Rev. 8/82)

B. **Subjective Complaints:**

Plaintiff's next argument concerns the ALJ's determination that her subjective complaints were not totally credible. The ALJ is required to consider all the evidence relating to Plaintiff's subject complaints, including evidence presented by third parties that relates to: 1) Plaintiff's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitation and aggravating factors; 4) dosage, effectiveness, and side effects of medication; and, 5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

When making a determination based on these factors to reject an individual's complaints, the ALJ must make an express credibility finding and give his reasons for discrediting the testimony." *Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir.1996) (citing *Hall v. Chater*, 62 F.3d 220, 223 (8th Cir. 1995)). Such a finding is required to demonstrate the ALJ considered and evaluated all of the relevant evidence. *See Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995) (citing *Ricketts v. Secretary of Health and Human Servs*., 902 F.2d 661, 664 (8th Cir. 1990)). However, if "the ALJ did not explicitly discuss each Polaski factor in a methodical fashion," but "acknowledged and considered those factors before discounting [the claimant's] subjective complaints of pain . . . . An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where . . . the deficiency probably had no practical effect on the outcome of the case." *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996) (citing *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987)).

Plaintiff challenges the ALJ's credibility analysis, stating that he failed to perform a proper *Polaski* analysis because he did not discuss her work history, the fact that she tried to work after her

5

alleged onset date but was physically unable to endure the work, the side effects of her medications, the edema in her legs, and her lack of access to health care. She also attacks the ALJ's statement that her subjective complaints are only credible to the extent they are consistent with his RFC assessment, and his overstatement of her daily activities and selective consideration of her testimony. However, in reviewing the ALJ's decision and the medical evidence of record, the undersigned can find no error in the ALJ"s credibility analysis.

Although a September 2008 onset date is alleged, Plaintiff did not seek medical attention until August 2009, at which time she had tenderness in her left lower quadrant and lumbar spine. Tr. Tr. 226-233. A physical exam revealed a normal range of motion in her back and extremities, normal motor strength, normal reflexes, and a normal gait. Further, no swelling of any kind was noted. Plaintiff was diagnosed with chronic lumbosacral strain.

In September 2009, Plaintiff was referred to Dr. Becky Floyd for a general physical examination. Tr. 236-239. Marie Pham-Russell, her nurse practitioner, performed the exam. Plaintiff reported problems with her back, legs, and knees, but a physical exam revealed a normal range of motion in all joints with no edema, muscle atrophy, muscle weakness, sensory abnormalities, or problems with her gait. Nurse Pham-Russell noted that Plaintiff was able to stand and walk without assistive devices, walk on her heel and toes, and squat and arise from a squatting position. X-rays showed minimal degenerative endplate changes of the lower thoracic spine, minimal osteoarthritis in the right knee, and mild osteoarthritis in the left knee. Tr. 235. Accordingly, she diagnosed her with obesity and back and knee pain. However, she found no physical limitations resulting from these diagnoses. Nurse Pham-Russell's assessment was then affirmed by Dr. Floyd as is evidenced by her signature.

In November 2009, Plaintiff visited Clouse Chiropractic Family Practice on two occasions primarily due to knee pain. Tr. 267-270. She also reported pain in her neck, lower back, shoulders, right elbow and hand, and left hip and leg, and indicated that sitting, walking, and bending made her pain

worse. Dr. Clouse administered electrical stimulation and cryotherapy, and recommended that she apply ice to her knees three to four times a day and limit her activity. Tr. 267-268.

In early December 2009, Plaintiff visited Good Samaritan Clinic. Tr. 245. She noted a history of elevated blood pressure and continual swelling in her ankles. Tr. 245. Her blood pressure was 160/72. Plaintiff also reported occasional chest pain and difficulty at times with an urgent need to urinate. An examination revealed pitting edema in both lower legs. The doctor prescribed Lisinopril and Hydrochlorothiazide ("HCTZ") and indicated he would check her lab work for evidence of end organ involvement. Her lab work ultimately revealed hyperlipidemia, so Pravastatin was also prescribed. Tr. 258.

By late December, Plaintiff's edema had improved. Tr. 260. Her blood pressure was 140/88, she continued to exhibit some edema in her lower extremities, and had mild tenderness in her lower spine. The doctor diagnosed her with controlled hypertension and hyperlipidemia. However, only Pravastatin and a diet change were prescribed.

Plaintiff did not seek out further treatment until May 13, 2010. Tr. 266. At this time, the doctor advised her to continue her medication for high cholesterol, hypertension, and allergies and to watch her diet. The doctor noted that she was tolerating her hypertension medications well with good results. And, although she complained of decreased concentration, was advised to stop drinking Pepsi. This was her last treatment record.

In his analysis, the ALJ noted Plaintiff's morbid obesity and recognized that it clearly contributed to the severity of her condition and resulted in limited mobility and increased health risk. He also acknowledged her diagnosis of osteoarthritis, but correctly pointed out that the record reflected only conservative medical treatment consisting of over-the-counter medications and chiropractic care that was generally successful in relieving her symptoms. *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be

considered disabling). Physical exams also revealed a normal range of motion in her back and extremities, normal motor strength, normal reflexes, a normal gait, and normal straight leg raise tests. Lumbar tenderness was noted on only two occasions. And, x-rays revealed only minimal to mild osteoarthritis in both knees and the thoracic spine. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider).

We also note that Plaintiff used only Bio-freeze, Advil, Tylenol, and chiropractic adjustments to treat her pain. Tr. 39. No prescription pain medication was ever prescribed. *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain); *Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints).And, we can ascertain no evidence of medication side effects related to her use of Bio-Freeze,[2] Advil, or Tylenol.

Plaintiff was also treated for bilateral edema on two occasions in December 2009. *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). However, treatment notes indicate that her edema improved. She did not again seek treatment for any impairment until May 2010, at which time there was no mention of edema. Accordingly, we cannot say this impairment was as severe as Plaintiff has alleged.

With regard to her hypertension, the ALJ correctly noted that Plaintiff had received only conservative treatment for this impairment consisting of medication. *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). And, records indicate that Plaintiff responded to and tolerated the medications well. Further, there is no indication in the record

---

[2]Bio-Freeze is an over-the-counter topical analgesic utilizing Menthol to "override pain signals to the brain." *Bio-Freeze Cold Therapy Pain Relief*, http://biofreeze.com/page /en/faqs-consumer.aspx#faq_5 (Last accessed May 21, 2013).

8

that Plaintiff's hypertension was severe enough to result in end organ involvement, as would be required to meet the listing.

While we do note that the ALJ did not discuss Plaintiff's work history, we do not believe said failure warrants remand in this case. And, the fact that Plaintiff attempted to work after her alleged onset date but was reportedly unable to endure it is also not a determinative factor. Working after the onset of an impairment constitutes some evidence of an ability to work, which actually weights against a Plaintiff's credibility. *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005) (Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work.).

A review of Plaintiff's reported daily activities is also somewhat inconsistent. In September 2009, she reported the ability to help her daughter with the housework, care for her personal hygiene with some limitations related to pain, prepare simple meals weekly, ride in a car, go out alone (although she did not do so often), drive (although she did not do so often), shop in stores for food and other items once per week, pay bills, count change, handle a savings account, use a checkbook/money orders, watch television, read, talk on the telephone, and visit with family. In December, she indicated that she could perform the same basic activities, but added that she could wash her own clothes, take her dog outside daily, and watch movies. Tr. 181-188. However, her testimony at the hearing described a much more restricted lifestyle. And, as previously discussed the medical evidence is quite limited and does not indicate that her condition deteriorated between September 2009 and August 2010, warranting the restrictions alleged at the administrative hearing. Accordingly, although she did not report being overly active, we find that the contradictions in her statements weigh against her credibility.

Plaintiff's contention that the ALJ's failure to mention her lack of access to health care warrants remand is also misplaced. While Plaintiff did begin availing herself of treatment at the Good Samaritan Clinic in December 2009, she did not maintain a consistent pattern of treatment. Records reveal only four treatments. The evidence prior to this time also fails to show that Plaintiff attempted to avail herself of

9

indigent or low cost healthcare. Accordingly, we do not find that her financial status excused her failure to seek out treatment or medication on a frequency that would be consistent with her allegations of disabling pain. And, it is the opinion of the undersigned that substantial evidence supports the ALJ's credibility determination.

### C. RFC:

Plaintiff also opposes the ALJ's RFC assessment, contending that it does not take into account all of her impairments. Specifically, she posits that it does not adequately account for her need to elevate her legs when seated and her need for a sit/stand option. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

After reviewing the evidence, the undersigned is of the opinion that the record supports the ALJ's RFC assessment. On January 5, 2010, Dr. Bill Payne, a non-examining, consultative examiner concluded Plaintiff could perform a full range of light work. Tr.248 -255.

On September 3, 2010, Dr. Lance Clouse, a chiropractor, completed an assessment form describing Plaintiff's work-related limitations. Tr. 271-273. He indicated that she could sit for five hours per day and no more than 30 minutes at a time; could stand for one hour per day but no more than 15 minutes at a time; and could walk for 45 minutes per day but no more than ten to 15 minutes at a time. She could rarely lift and carry six to ten pounds, needed to elevate her legs when seated, and could occasionally grip and finger/fine manipulate with both hands. Additionally, he felt she should avoid squatting, crawling, stooping, kneeling, balancing, twisting, climbing ladders and scaffolds, and work near hazardous conditions. Tr. 271-273.

Plaintiff contends that the ALJ erred in failing to give Dr. Clouse's opinion more weight. However, Dr. Clouse treated Plaintiff on only two occasions in 2009, and his treatment notes do not support his RFC assessment. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("ALJ may discount or even disregard opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions"). Each treatment consisted of the administration of electrical stimulation and cryotherapy and a recommendation that she apply ice to her knees several times per day and limit her activities. Treatment notes reveal that she tolerated the treatment well with no increased pain or complications. And, although Plaintiff stated that certain activities resulted in pain, she was neither restricted from nor reported being unable to perform any specific activities. Dr. Clouse merely advised her to restrict her activities without elaboration. *See Melton v. Apfel*, 181 F.3d 939, 941 (8th Cir. 1999) (holding that lack of physician imposed limitations weighs against credibility).

AO72A
(Rev. 8/82)

Further, as discussed in the previous section, the other medical evidence revealed that she did not consistently seek out medical treatment, was not taking prescription pain medication, and responded well to conservative treatment with no noted side effects. Accordingly, it is the opinion of the undersigned that the RFC assessment should stand.

### D. The Grids:

Plaintiff's last point of error concerns that ALJ's use of the Grids, given her alleged need for a sit/stand option and to elevate her legs when sitting. The ALJ may rely exclusively on the guidelines even though there are nonexertional impairments if the ALJ finds, and the record supports the finding, that the non-exertional impairments do not significantly diminish the claimant's RFC to perform the full range of activities listed in the guidelines. *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005); *Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir. 1997). In particular, "[w]hen a claimant's subjective complaints of pain 'are explicitly discredited for legally sufficient reasons articulated by the ALJ,' " the Commissioner's burden may be met by use of the Guidelines. *Baker v. Barnhart*, 457 F.3d 882, 894–95 (8th Cir. 2006) (quoting *Naber v. Shalala*, 22 F.3d 186, 189–90 (8th Cir. 1994) (quoting *Hutsell v. Sullivan*, 892 F.2d 747, 750 (8th Cir. 1989)). The burden is on the ALJ to demonstrate that the use of the Guidelines is proper. *Lewis v. Heckler*, 808 F.2d 1293, 1298 (8th Cir. 1987).

In the present case, we find that the Grids were properly used. The evidence does not support Plaintiff's allegations that she necessitated a sit/stand option or the ability to elevate her legs when sitting down. As previously discussed, these limitations were assessed by Plaintiff's treating chiropractor who treated her on only two occasions and failed to document physical findings and limitations consistent with those reported in his assessment.

### IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus recommends that the decision be

AO72A
(Rev. 8/82)

affirmed, and Plaintiff's Complaint be dismissed with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of May 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)